**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LESLIE WILLIAMS,**

                 **Plaintiff,**           **1:09-cv-933
                                                                           (GLS/CFH)**

            **v.**

**UNITED STATES OF AMERICA
et al.,**

                 **Defendants.**
_____

**APPEARANCES:**          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Cooper, Erving Law Firm         BRIAN W. MATULA, ESQ.
39 North Pearl Street
4th Floor
Albany, NY 12207

**FOR THE DEFENDANTS:**
HON. RICHARD S. HARTUNIAN    DIANE CAGINO
United States Attorney          Assistant U.S. Attorney
445 Broadway
218 James T. Foley U.S. Courthouse
Albany, NY 12207-2924

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Leslie Williams commenced this action against defendants

United States of America, United States Postal Service (USPS), and James W. Hughes[1] (collectively "the government") pursuant to the Federal Tort Claims Act (FTCA).[2] (*See* Compl., Dkt. No. 1.) Williams alleges that she was injured in a motor vehicle accident attributable to the negligence of Hughes while he was operating a vehicle owned by the United States of America and USPS within the scope of his employment, and with the knowledge of the owners of that vehicle. (*See id.*) Pending before the court is the government's motion for summary judgment based upon the absence of "serious injury." (*See* Dkt. No. 30.) Williams cross-moved for partial summary judgment on the issues of liability and serious injury. (*See* Dkt. No. 33.) For the reasons that follow, the government's motion is denied, and Williams' cross motion is granted on the issue of liability, but denied in all other respects.

## II. Background

### A. Facts[3]

---

[1] Although not entirely clear, it appears that Hughes is now deceased. (*See* Dkt. No. 39, Defs.' Resp. to Pl.'s Statement of Material Facts ¶ 61.)

[2] *See* 28 U.S.C. §§ 1346(b), 2671-2680.

[3] Unless otherwise noted, the facts are undisputed.

2

Williams was involved in a motor vehicle accident with a USPS truck driven by Hughes, who was acting in the scope of his employment with USPS, on August 24, 2007. (*See* Dkt. No. 30, Defs.' Statement of Material Facts (SMF) ¶ 1; Dkt. No. 33, Pl.'s SMF ¶ 57.)[4] Upon examination at the hospital, Williams was found to have no evidence of fracture or dislocation involving the cervical spine or shoulder, and a normal chest x-ray. (*See* Defs.' SMF ¶ 25.) Instead, she suffered soft tissue injuries to her right shoulder and cervical spine, which resulted in pain and some deficits in her range of motion. (*See* Defs.' SMF ¶¶ 26-45; Pl.'s SMF ¶¶ 71, 78-81, 84-89.) Prior to the 2007 accident, Williams was involved in three other automobile accidents; as a consequence of those incidents, Williams suffered injuries to her neck, right shoulder, and back. (*See* Defs.' SMF ¶¶ 1-3, 7, 9-12, 15-17.)

B.  **Procedural History**

Williams commenced this action on August 14, 2009, alleging a FTCA claim based upon Hughes' negligence, and seeking damages. (*See* Compl.) The government filed an answer, but did not assert lack of serious

---

[4] Although neither party mentions it in their SMF, it appears to be undisputed that the accident occurred in the Town of Colonie, New York. (*See* Compl. ¶ 13.)

injury as an affirmative defense. (*See* Dkt. No. 11.) After the dispositive motion filing deadline passed, the government sought permission to file a late summary judgment motion. (*See* Dkt. No. 23.) The court granted that request. (*See* Dkt. No. 25.) The government thereafter moved for summary judgment, and Williams cross-moved for partial summary judgment, as set forth above. (*See* Dkt. Nos. 30, 33.)

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### IV. Discussion

#### A. Compliance with N.D.N.Y. L.R. 7.1

As a threshold matter, Williams argues that the government's motion should be denied for noncompliance with N.D.N.Y. L.R. 7.1. (*See* Dkt. 33, Pl.'s Mem. of Law. in Opp'n to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s Resp./Cross Mot.") at 3-5.) In particular, Williams claims that an attorney affidavit submitted with the government's motion is improper "[t]o the extent that [it] is intended to verify

4

legal argument and cited cases," and that the government's Statement of Material Facts relies on exhibits to the government's Memorandum of Law, which are supported only by the aforementioned attorney affidavit, in contravention of L.R. 7.1(a)(3). (*See id.*) The government has submitted a separate affidavit for the purpose of authenticating the exhibits it attached to its Memorandum of Law to remedy any error. (*See* Dkt. 39, Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J. and Defs.' Resp. to Pl.'s Cross Mot. for Partial Summ. J. ("Defs.' Reply/Resp.") at 2-3; Aff. of Margaret B. Baldwin.)

While Williams is correct that the Local Rules require the statement of material facts cite to the record—which consists of "the pleadings, depositions, answers to interrogatories, admissions and affidavits," but not attorney affidavits—the affidavit filed by the government with its reply/response remedied any error that may have been present. N.D.N.Y. L.R. 7.1(a)(3). In sum, the court finds no fault with the government's motion papers or its compliance with the Local Rules.

**B.** **The Government's Failure to Plead Lack of Serious Injury as an Affirmative Defense**

Next, Williams asserts that the government's motion should be

5

denied for its failure to plead the absence of serious injury as an affirmative defense.  (*See* Pl.'s Resp./Cross Mot. at 5-6.)  The government concedes that it failed to assert the defense in its answer, but argues that its misstep is not fatal because Williams was neither surprised nor prejudiced by it, and because the failure was not the result of bad faith or undue delay on the part of the government.  (*See* Defs.' Reply/Resp. at 3-4.)

Federal Rule of Civil Procedure 8 requires the party responding to a pleading to "affirmatively state any . . . affirmative defense."  Fed. R. Civ. P. 8(c).  While the failure to plead an affirmative defense generally results in waiver, *see Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 n.2 (2d Cir. 1988), "'a district court may . . . entertain [unpleaded] affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings,'" *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)).

Here, none of the circumstances requiring the court to ignore a late-raised affirmative defense are present.  Although Williams attempts to show that she was prejudiced during discovery on the issue of serious

6

injury, (*see* Pl.'s Resp./Cross Mot. at 5-6), she was nonetheless able to gather the affidavits of several physicians on this precise issue. (*See, e.g.*, Dkt. No. 33, Aff. of Eugene D. Kaplan, M.D. ("Kaplan Aff."); Aff. of Edward A. Apicella, M.D. ("Apicella Aff.").) And, with respect to her suggestion that she was not able to sufficiently address the expert report of Dr. Bryan Bilfield, Williams admits that his initial report addressed her injuries, which, in the court's view, put her on notice of the serious injury defense. (*See* Pl.'s Resp./Cross Mot. at 6.) Moreover, "serious injury" is a threshold question for tort recovery under New York's "No Fault Law," and could safely have been presumed to be at issue in this case by Williams. N.Y. Ins. Law § 5104(a) (McKinney 2009).

## C. The Government's Motion[5]

Finally, turning to the merits, the government contends that Williams did not suffer a serious injury as a result of the August 24, 2007 automobile

---

[5] The court notes that this FTCA case is governed by New York substantive law. *See* 28 U.S.C. §§ 1346(b)(1), 2674. Additionally, the court is aware of Williams' arguments regarding the admissibility of certain documents proffered by the government in support of its motion. (*See* Pl.'s Resp./Cross Mot. at 7-8.) Notwithstanding the admissibility issue, the court is satisfied, based upon evidence that the parties agree can be considered by it, that questions of fact exist, which preclude summary judgment.

7

accident, and, thus, is barred from bringing suit for pain and suffering arising out of that accident under the No Fault Law. (*See* Dkt. No. 30, Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mot.") at 17-25.) After identifying four potentially applicable definitions of serious injury, the government claims that Williams cannot meet any of them. (*See id.*) The government relies upon the opinion of Dr. Bilfield to assert that no objective medical evidence supports the existence of a serious injury, and that Williams' injuries "are not causally related to the subject motor vehicle accident." (*Id.* at 18-24.) Williams counters that: (1) the proof offered by the government, at best, "creates a question of fact as to whether [she] sustained a serious injury" from significant limitation of a body function or system; (2) the government failed to establish that her injuries were caused by the prior automobile accidents; (3) the government did not make a prima facie showing on the issue of whether she suffered a "permanent injury"; and (4) the government has not proven that she was able to perform substantially all of her daily activities for at least ninety of the one hundred eighty days following the 2007 accident. (Pl.'s Resp./Cross Mot. at 8-12 at 8-16).

    As applicable here, New York's No Fault Law precludes recovery of

8

non-economic loss—*i.e.*, pain and suffering—resulting from the negligent operation of a motor vehicle "except in the case of a serious injury." N.Y. Ins. Law § 5104(a). "Serious injury" includes, among other things,

> personal injury which results in . . . permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

*Id.* § 5102(d). As pertinent here, to prevail on a summary judgment motion, a defendant claiming that the plaintiff did not suffer a serious injury must present competent medical evidence that the plaintiff's injuries were not caused by the vehicle accident at issue, *see Ostroll v. Nargizian*, 97 A.D.3d 1076, 1077 (3d Dep't 2012), or that the injuries do not meet the definition for "serious injury" as set out in section 5102(d), *see Henry v. Rivera*, 34 A.D.3d 352, 353 (1st Dep't 2006); *Seminara v. Grossman*, 253 A.D.2d 420, 421 (2d Dep't 1998).

In this case, the government met its burden through the declaration of

Dr. Bilfield, who reviewed Williams' medical records and performed an independent medical examination (IME) of her in 2010. (*See* Dkt. No. 30, Decl. of Bryan S. Bilfield, M.D. ("Bilfield Decl.") ¶¶ 2-6.) To a reasonable degree of medical certainty, Dr. Bilfield opined that Williams: "is not disabled and has not sustained a permanent injury as a result of the motor vehicle accident of August 24, 2007"; "has not sustained a significant limitation of use"; "did not sustain a medically determined injury of her cervical spine or right shoulder which would have prevented her from performing substantially all of her normal and customary activities for a period of 90 days during the first 180 days immediately following the accident"; and "any complaint of shoulder pain is not causally related to the [subject] motor vehicle accident."[6] (*Id.* ¶ 9.) Dr. Bilfield's opinion is largely

---

[6] The court notes, as urged by Williams, (*see* Pl.'s Resp./Cross Mot. at 9), that IME physicians Jeffrey Gundel, who examined Williams twice, Barry Katzman, and Patrick Hughes all opined that Williams' injuries to her cervical spine and right shoulder were causally related to the 2007 accident. (*See* Bilfield Decl. Ex. 3 at 4; *id.* Ex. 4 at 4; *id.* Ex. 5 at 4; *id.* Ex. 6 at 6.) Each of those opinions about causation includes a caveat, however, that they were premised upon the history reported by Williams, an assumption that Williams was truthful, the available medical records, and examination. (*See id.* Ex. 3 at 4; *id.* Ex. 4 at 4; *id.* Ex. 5 at 4; *id.* Ex. 6 at 6.) Saliently, if Williams disclosed anything about her prior accidents, she explained that she had recovered fully, and each doctor only reviewed medical records that post dated the 2007 accident. (*See id.* Ex. 3 at 2-3; *id.* Ex. 4 at 2-3; *id.* Ex. 5 at 2-3; *id.* Ex. 6 at 2, 3, 4-5.) As such, the court

based upon the notion that, at the time of the 2007 accident, Williams had a preexisting injury to her right shoulder, which emanated from the prior vehicle accidents, that the medical evidence—including x-rays, MRIs, and scans—suggests only "mild," "slight," "minimal," or "subtle" abnormalities of her cervical spine and right shoulder, and that Williams was possibly malingering inasmuch as her subjective complaints of symptoms and pain did not square with the objective medical evidence. (*Id.* ¶¶ 7-8.)

Although the foregoing opinion is sufficient to meet the government's burden, Williams has demonstrated material issues of fact requiring denial of the government's motion. In particular, Drs. Eugene Kaplan and Edward Apicella offered opinions that conflict with that of Dr. Bilfield. (*See* Kaplan Aff.; Apicella Aff.) On the issue of causation, Drs. Kaplan and Apicella, who were both aware of Williams' three prior accidents, opined that her injuries were caused by the 2007 accident. (*See* Kaplan Aff. ¶¶ 12, 25, 64[7]; Apicella Aff. ¶¶ 4, 14.) Moreover, Dr. Kaplan described Williams' injuries as permanent, causing significant limitation, and resulting in her

---

deems these IME reports not to be particularly helpful on the question of causation.

[7] Notably, Dr. Kaplan specifically disagreed with Dr. Bilfield's assessment of causation. (*See* Kaplan Aff. ¶ 46.)

inability to perform substantially all of her daily activities since the accident. (*See* Kaplan Aff. ¶¶ 12, 58, 60.) Dr. Apicella reached a nearly identical conclusion regarding Williams' "chronic pain, right-sided brachioplexopathy and cervical sprain in her upper right extremity." (Apicella Aff. ¶ 14.) These medical opinions demonstrate a classic battle of experts best left for resolution by the court during the impending bench trial. *See Mesimeris v. United States*, No. 03-CV-0925, 2006 WL 148911, at *8 (E.D.N.Y. Jan. 17, 2006); *see also* 28 U.S.C. § 2402.

### D. <u>Williams' Cross Motion</u>

In her cross motion, Williams seeks partial summary judgment as to liability and the existence of serious injury. (*See* Pl.'s Resp./Cross Mot. at 16-21.) On liability Williams alleges that the government was negligent as a matter of law given the nature of the collision. (*See id.* at 16-17.) As for serious injury, Williams argues that the proof establishes "a significant limitation of use of a body function or system," "that she was prevented from performing substantially all of her activities for 90/180 days," and "that her injuries [are] causally related to the [2007] accident." (*Id.* at 17-21.) The government concedes liability, but steadfastly argues that causation is lacking and Williams does not meet any applicable definition of serious

12

injury. (*See* Defs.' Reply/Resp. at 2, 4-15.) For the same reasons already discussed, *see supra* Part IV.C, Williams' cross motion is denied to the extent that she seeks partial summary judgment on the issue of whether she sustained a serious injury as a result of the 2007 accident. The cross motion is granted, however, on the issue of liability as conceded by the government.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the government's motion (Dkt. No. 30) is **DENIED**; and it is further

**ORDERED** that Williams' cross motion (Dkt. No. 33) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** to the extent that it seeks summary judgment on the issue of liability; and

**DENIED** in all other respects; and it is further

**ORDERED** that this case is deemed trial ready and the court, in due course, shall issue a trial scheduling order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

13

**IT IS SO ORDERED.**

December 11, 2012
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court